AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER 305-776-0638 (T-MOBILE USA, INC.)

Case No. **1:25-mj-00962**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A. This court has authority to issue the warrant under 18 U.S.C. Sections 2703(c)(1)A), and 2711(3)(A). Because the government has satisfied the requirements of 18 U.S.C. Section 3122, this warrant also constitutes an order under 18 U.S.C. Section 3123.

located in the ________ District of New Jersey, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. Section 2422(b) | Coercion and enticement |
| 18 U.S.C. Section 2252A(a)(2) | Receipt or distribution of child pornography |
| 18 U.S.C. Section 2252A(a)(5) | Possession of child pornography |

The application is based on these facts:

See attached affidavit. To ensure technical compliance with 18 U.S.C. Sections 3121-3127, this warrant also functions as a pen register order. I certify that the information likely to be obtained is relevant to a FBI investigation

☑ Continued on the attached sheet.

☑ Delayed notice of 30 days *(give exact ending date if more than 30 days:* ________ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Brandon Capps
*Applicant's signature*

Special Agent Brandon Capps, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
FaceTime Video Conference *(specify reli*

Date: **Dec 5, 2025**

Karen L. Litkovitz
Karen L. Litkovitz
United States Magistrate Judge

City and state: Cincinnati, Ohio

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF OHIO

# ATTACHMENT A

## Property to Be Searched

1. The cellular telephone assigned call number **305-776-0638** (the "**Target Cell Phone**"), whose service provider is T-Mobile USA, Inc ("T-Mobile"), a wireless telephone service provider headquartered in Parsippany, New Jersey.

2. Records and information associated with the **Target Cell Phone**, including location information, that is within the possession, custody, or control of T-Mobile**,** including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be Disclosed by the Provider

1. *Historical and Subscriber Information*. To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **November 8, 2025 to present**:

   a. The following information about the customers or subscribers of the Account:

      i. Names (including subscriber names, user names, and screen names);
      ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
      iii. Local and long distance telephone connection records;
      iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
      v. Length of service (including start date) and types of service utilized;
      vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
      vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and
      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

   b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication – i.e., call detail records - and records of data events across all networks (3G, 4G, 5G)
      ii. All historical location information, including data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the Target Cell Phone for the time period November 8, 2025, to present. Included is any specialized location data commonly referred to as Network Element Location Service

(NELOS), AriesoGeo, Per Call Measurement Data (PCMD), Real Time Tool (RTT), and/or Timing Advance/TruCall.

2. *Prospective Location Information*. The Provider shall provide all prospective location information about the location of the Target Cell Phone described in Attachment A for a period of **thirty days**, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A. To the extent that the location information is within the possession, custody, or control of Provider, Provider is required to disclose the Location Information to the government. This includes all call detail records required to produce the requested location information. Note that this does not include the content to communications. In addition, Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

3. *Prospective Pen-Trap Information*. Pursuant to 18 U.S.C. § 3123, the FBI may install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the cell phone identified in Attachment A, including the date, time, and duration of the communication, and the following, without geographic limit:

    - IP addresses associated with the cell phone device or devices used to send or receive electronic communications
    - Identity of accounts that are linked by creation IP address, recovery email, telephone number, or other identifiers
    - Identity of all accounts that are linked to the account by cookies
    - Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone identified in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN
    - IP addresses of any websites or other servers to which the cell phone device or devices connected
    - Source and destination telephone numbers and email addresses
    - "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c)
    - Source and destination telephone numbers
    - Date, time, and duration of communication
    - All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication. Included is any specialized location data commonly referred to as Network Element Location

Service (NELOS), AriesoGeo, Per Call Measurement Data (PCMD), Real Time Tool (RTT), and/or Timing Advance/TruCall.

Pursuant to 18 U.S.C. § 3123(c)(1), the use and installation of the foregoing is authorized for **thirty days** from the date of this Order. Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

## II. Information to be Seized by the Government

1. All information described above in Section I that constitutes evidence of 18 U.S.C. § 2422(b) – Coercion and enticement, 18 U.S.C. § 2252A(a)(2) - distribution or receipt of child pornography, and 18 U.S.C. § 2252A(a)(5)(B) - possession of child pornography, the "subject offenses".

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

Pursuant to 2703(g), the presence of an agent is not required for service or execution of this warrant.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

**AO 106 Attachment**

See Affidavit in Support of an Application for a Search Warrant. To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order. Consistent with the requirement for an application for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation. *See* 18 U.S.C. §§ 3122(b), 3123(b).

I declare under penalty of perjury that the foregoing is true and correct.

December 5, 2025
DATE

*/s/Danielle E. Margeaux*
DANIELLE E. MARGEAUX
(OH 98348)
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE NUMBER ASSIGNED CALL NUMBER 305-776-0638 (T-MOBILE USA, INC.) | Case No. **1:25-mj-00962**<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Brandon Capps, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **305-776-0638** (the "**Target Cell Phone**"), whose service provider is T-Mobile USA, Inc. ("T-Mobile"), a wireless telephone service provider headquartered in Parsippany, New Jersey. The **Target Cell Phone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B. As discussed below, the **Target Cell Phone** has been used by Ronny GOMORA in furtherance of violation of 18 U.S.C. § 2422(b) – Coercion and enticement, 18 U.S.C. § 2252A(a)(2) - distribution or receipt of child pornography, and 18 U.S.C. § 2252A(a)(5)(B) - possession of child pornography, the "subject offenses". This warrant requests the following information from T-Mobile: (1) prospective location information for a period of thirty days from the date of this warrant; (2) historical location information (including subscriber information) from November 8, 2025 through the date of this warrant; and (3) prospective pre-register/trap and trace data for a period of thirty day from the date of this warrant.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since March of 2020. Prior to my employment at the FBI, I was employed for three years as a Certified Public Accountant for Plante Moran, PLLC. I am currently assigned to violent crime squad at the FBI Cincinnati Field Office. While employed by the FBI, I have investigated federal criminal violations related to violent crimes against children and the sexual exploitation of children, among others. I have gained experience through training at the FBI to include interviewing techniques, arrest procedures, search and seizure, and investigative techniques. Additionally, I have experience utilizing confidential informants, toll records, GPS information, digital and social media search warrants, bank records, and other analytical procedures in furtherance of federal investigations. As a federal agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. See 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

6. On June 13, 2025, West Chester Police Department ("WCPD") responded to [redacted] High School regarding a potential sex offense. WCPD spoke with a school therapist that disclosed a student's father ("T[redacted]) expressed concerns about his daughter (16-year-old student, hereby minor victim 1 "MV1"). T[redacted] accessed MV1's iPad and discovered she had been communicating with a 31-year-old from Los Angeles, CA named Ronny. MV1 admitted to her father that she had sent partially nude selfie images to Ronny and that Ronny sent a photo of his "private parts" to MV1. T[redacted] expressed his concerns that it appeared through the communications, that Ronny was grooming his daughter. The school therapist advised WCPD that T[redacted] is currently out of town for work but can reached after June 20, 2025, when he returns.

7. On June 21, 2025, T[redacted] and MV1 went to WCPD to speak to law enforcement and provide additional information. T[redacted] advised that MV1 was communicating with an unknown male on Discord[1] and arranged a meeting with the male. MV1 did not feel comfortable speaking

[1] Discord is an instant messaging and VoIP social platform that allows communication through voice calls, video calls, text messaging, and media. Communication can be private or take place in virtual communities called "servers". Such a server is a collection of persistent chat rooms and voice channels accessed by invitation links. Discord runs on Windows, macOS, Android, iOS, iPadOS, and Linux, and in web browsers.

about the situation in the presence of her father so WCPD conducted an interview of MV1 in a soft interview room[2] after receiving consent from T[redacted]

8. MV1 reported that she met Ronny online approximately a month ago on the application Discord. The two engaged in mutual conversation in which they exchanged nude photos. Ronny stated that he lived in Los Angeles and would fly to West Chester to meet MV1. MV1 reported that earlier that day (June 21, 2025), MV1 walked from her residence to [redacted] Library and met Ronny in the Young Adult section between approximately 2:00pm and 2:30pm. After approximately 10 minutes, Ronny stated that he had a hotel room nearby and they walked to the area of Chipotle on Union Centre where Ronny ordered an Uber. MV1 stated that the Uber ride took approximately 8 minutes, and they did not get on the expressway. MV1 was unsure of the name of the hotel. MV1 stated that they went into Ronny's room (#105), and she sat down on the end of the bed. Ronny pushed her back onto the bed and laid on top of her and began kissing her on the mouth. MV1 stopped him a short time later and told him that she did not know what to do as she had never kissed anyone. Ronny then began rubbing her arms and legs as he was kissing her and moved his hand under her shirt and bra and began touching her breasts. MV1 stated that while he was doing this, he placed a vibrator on top of her clothes near her vaginal area. MV1 became uncomfortable and stopped Ronny at this point. Ronny then asked MV1 to take off her clothes which she refused. Ronny then stood in front of her at the end of the bed and removed his pants and underwear revealing his penis and sat on the bed next to her. MV1 stated Ronny took MV1's hand and placed it on his penis and told her to "stroke it." MV1 stated she began to stroke

---

[2] A soft interview room is setup to create a more comfortable environment compared to a normal interview room. A soft interview room may contain furniture such as a couch. In a law enforcement setting, a soft interview room is generally utilized to interview victims and/or witnesses.

his penis however began to cry and stopped. MV1 stated Ronny then told her that she didn't have to touch it and told her to kneel in front of him on the ground at which time he slowly got closer to her and placed his penis in her mouth. MV1 stated that she began choking and crying and stopped. Ronny then stated that she did not have to do anything else and ordered MV1 an Uber back to the [redacted] Library where she walked back to her residence. MV1 disclosed that her Discord account is associated with email account [redacted]@gmail.com.

9. MV1 provided a description of the hotel and WCPD investigators and based on the description, WCPD believed that it could be the Welcome Suites located in Springdale, OH. When MV1 was shown a photo of the Welcome Suites, MV1 advised it looked familiar but was not sure. MV1 was then transported to Cincinnati Children's Hospital by her father for a Sexual Assault Nurse Examiner (SANE) exam. The results revealed no physical findings suggestive of sexual assault or abuse.

10. On June 22, 2025, WCPD received consent from T[redacted] to search MV1's iPhone and iPad that MV1 utilized to communicate with Ronny on Discord.

11. On June 23, 2025, WCPD responded to Welcome Suites located at 11645 Chesterdale Road, Springdale, OH 45246. WCPD obtained booking information for room 105 which revealed that Ronny GOMORA booked room 105 from June 20, 2025 to June 23, 2025. GOMORA had checked out early that day (June 23, 2025). GOMORA provided a Florida ID card as part of the reservation. Additionally, WCPD obtained a screenshot of video surveillance footage showing two individuals matching the likeness of GOMORA and MV1 walk into the hotel at approximately 2:39PM on June 21, 2025.

12. On June 30, 2025, Cincinnati Children's Hospital conducted a follow up forensic interview of MV1. During the interview, MV1 corroborated the information in regard to the

physical meeting with GOMORA to include the sexual activity. MV1 advised that Ronny told her not to tell anyone about the sexual activity that occurred at the hotel. In addition, MV1 advised Ronny requested nude photos of MV1 via Discord. MV1 asked GOMORA if it was even legal in which Ronny responded its fine if you just delete the pictures. MV1 and GOMORA had several calls via the Discord application. During the interview, MV1 advised that she has dealt with suicidal thoughts and actions dating back prior to her relationship with GOMORA.

13. WCPD reviewed forensic images of the MV1's iPhone and iPad. WCPD observed multiple images depicting MV1 with her breasts exposed on the iPhone with file dates during the same timeframe as the Discord communications with GOMORA. Additionally, WCPD observed an image depicting apparent child pornography depicting a minor female matching the likeness of MV1 on MV1's iPad. I have also reviewed the respective files. The file depicting child pornography can be further described below:

> *File Name: 5005.JPG*
> *File Date: 5/27/2025 2:51:25 AM UTC*
> *File Description: Image file depicting a post-pubescent minor female sitting down with her legs spread exposing her vagina. The minor female's face is not exposed but has dark colored hair and is only wearing a white colored sports bra. The minor female matches the likeness of MV1.*

14. On or about July 1, 2025, WCPD received a National Center For Missing & Exploited Children (NCMEC)[3] Cybertip 215185396 dated July 1, 2025. Cybertip 215185396 was

[3] The National Center for Missing & Exploited Children (NCMEC) is a private, non-profit 501(c)(3) organization created in 1984 by child advocates to serve as a national clearinghouse and resource center for families, victims, private organizations, law enforcement, and the public on missing and sexually exploited child issues. To further NCMEC's mission to reduce child sexual exploitation and prevent future victimization, NCMEC operates the CyberTipline. NCMEC makes information submitted to the CyberTipline by members of the public and Electronic Service Providers available to law enforcement and uses this information to identify online trends endangering children that can be addressed in child safety and prevention messaging.

submitted by the Electronic Service Provider (ESP) Discord Inc. Discord flagged text communications between users [redacted] and garis208#0000 for online enticement of children for sexual acts. Within the Cybertip report, Discord provided a series of text chats between the users in which Discord classified as communication that contains specificity which would indicate plans to meet and potential sexual engagement with a child in real life. Additionally, the Cybertip provided subscriber information for the suspect Discord account (garis208#0000) which can be summarized below:

> *Phone: +13057760638* ***(Target Cell Phone)***
> *Email Address: rgomora@gmail.com*
> *Username: garis208#0000*
> *Display name: xGaris*
> *IP address 76.176.16.60 (Login) 6/29/2025*
> *IP address: Spectrum, residential, Los Angeles CA*

15. On July 3, 2025, WCPD obtained state search warrants (OH) authorizing the search of Discord accounts garis208#0000 (GOMORA) and [redacted] (MV1).

16. I have reviewed the search warrant returns containing the data associated with the respective Discord accounts. I observed the text communications between the Discord users. The communications are largely sexual in nature to include GOMORA requesting and directing MV1 to take explicit images of herself. Additionally, GOMORA discusses traveling to meet MV1. The following are examples of the communications observed between garis208#0000 (GOMORA) and [redacted] (MV1):

**MV1 discloses her age to GOMORA**

<u>May 17, 2025</u>

garis208#0 hmm well how old are you?

| | |
|---|---|
| [redacted] | Iâ€™m[4] nervous to say.. its just weird because our age gap is so big |
| garis208#0 | it's okay, go ahead |
| [redacted] | what if you think iâ€™m too young |
| garis208#0 | c'mon you can tell daddy |
| [redacted] | will you block me if iâ€™m too young |
| [redacted] | i mean i wouldnâ€™t block you unless you dont wabt to talk to me |
| garis208#0 | you can tell me |
| [redacted] | even if i was like 10 years old like would i be able to tell you? (I swear iâ€™m older than that and you can tell by the picture) |
| garis208#0 | tell daddy already, be a good girl and tell me |
| [redacted] | fine |
| [redacted] | iâ€™m 16 and iâ€™m sorry |
| garis208#0 | wow, what a bad girl, why did you hide that? |
| [redacted] | well you didnt ask me |
| [redacted] | until now |
| garis208#0 | well you knew my age, you could have said something |
| [redacted] | i said i was a lot younger |
| garis208#0 | well that can mean 18 or 19 or something |
| [redacted] | iâ€™m sorry i dont have to talk to you anymore |
| [redacted] | i dont want to make you uncomfortable |
| garis208#0 | do you still want to talk to me? |
| [redacted] | is it bad if i do |
| [redacted] | i just feel so bad |
| [redacted] | its just that people dont really talk to me because of my age so i feel like i cant tell anyone |
| [redacted] | iâ€™m so sorry |
| garis208#0 | hmmm, well we already did it once, I guess it's fine to continue, as long as you'll be an honest girl from now on |
| [redacted] | I promise i will be honest with you |

**GOMORA requests explicit photos from MV1 and discusses deleting image files**

May 17, 2025

| | |
|---|---|
| [redacted] | like in my underwear? |
| garis208#0 | Ya, nude would be pref, but whatever you comfortable with |
| [redacted] | i think i would need to get to know you better beford i did a nude |

---

[4] Note that the text presented is how it was presented by Discord in the search warrant return. Based on my training and experience, the data has trouble with things such as apostrophes and emojis.

| | |
|---|---|
| garis208#0 | that's fine, you'll be worth the wait |
| garis208#0 | so can you do it in your underwear then? |
| [redacted] | i think so |
| [redacted] | as long as you let me delete it after |
| garis208#0 | sure, can i stroke to it a little before you do |
| [redacted] | yes |
| garis208#0 | good girl |
| garis208#0 | also if you can, maybe spread your cheeks a little with your hands? ðŸ˜› |
| [redacted] | i dont know if its good |
| garis208#0 | oh it's good |
| garis208#0 | you are so fucking hot |
| garis208#0 | i wish i was inside you right now |
| [redacted] | me too |
| garis208#0 | tell me what punishment you were imaging or are into |
| [redacted] | just like bending me over on a desk and spanking me |
| [redacted] | also when can i delete the picture |
| garis208#0 | idk, depends, do you want me to cum to it |

**GOMORA requests explicit video from MV1**

May 18, 2025

| | |
|---|---|
| garis208#0 | can you take a video of your face as you play with your pussy? I just want to see the cute faces of pleasure you make |
| [redacted] | yes master |
| [redacted] | iâ€™m going to have to be in the bathroom with the fan on so no one hears anything |
| [redacted] | if thatâ€™s okay |
| garis208#0 | of course |
| garis208#0 | as long as i get to see your adorable face enjoying herself |
| garis208#0 | fuck you are just too cute |
| garis208#0 | how's it going? still playing with yourself? |
| [redacted] | yes |
| [redacted] | Now i just finished |
| garis208#0 | good girl <a:pat_love:720628748247892050> |
| [redacted] | did you like the video |
| garis208#0 | i loved it, which i could see you make those faces in person |
| garis208#0 | you didn't even hesitate to take that one, becoming more submissive by the minute huh <:FuFu:424970589770350592> |
| [redacted] | i suppose youâ€™re breaking me down |
| garis208#0 | how did it feel taking that last video? |

| | |
|---|---|
| [redacted] | i still felt scared |
| [redacted] | but it was a bit better |
| [redacted] | itâ€™s nice when you get to see me like that |

**GOMORA requests explicit video from MV1. MV1 advises she is embarrassed and asks GOMORA if she is still too young for this.**
May 21, 2025

| | |
|---|---|
| garis208#0 | when you are ready, send a video, begging for master to call and fuck you |
| garis208#0 | understand? |
| [redacted] | aghhh |
| [redacted] | do i have to because im freaking out |
| garis208#0 | you don't have too. But why not? |
| [redacted] | i justâ€¦ im just so scared |
| garis208#0 | scared of what? |
| [redacted] | it just feels embarrassing |
| [redacted] | because i dont know why im like this |
| garis208#0 | like what? |
| garis208#0 | you don't need to be embarrassed about how you think or feel |
| [redacted] | Likeâ€¦ do you think im too young for this? |
| garis208#0 | not really. But like i said you don't have to do anything you don't want too |
| [redacted] | i will but im so scared |
| garis208#0 | there's nothing to be scared of, daddy is here for you <a:pat_love:720628748247892050> |
| [redacted] | thank you daddy |
| garis208#0 | no worries <:02kiss:457568348436299776> |
| [redacted] | ok i can call now if you want |
| [redacted] | i think we have to be quick though |
| garis208#0 | How quick? |
| [redacted] | Not sure |
| [redacted] | i have a feeling my brother is going to come downstairs at some point |
| [redacted] | |
| garis208#0 | can you hear me? |
| [redacted] | no |
| garis208#0 | restart the call |

**GOMORA requests explicit image from MV1**

May 27, 2025

| | |
|---|---|
| [redacted] | But I canâ€™t go in the bathroom anymore because I was in there for way too long |
| garis208#0 | Hmm how badly do you want it |
| garis208#0 | Maybe you can offer something else |
| [redacted] | Like what |
| garis208#0 | Maybe show master your pussy? |
| [redacted] | ðŸ˜³ðŸ˜³ |
| garis208#0 | 4 minutes to decide |
| garis208#0 | Lmao |
| [redacted] | Iâ€™m scared though |
| garis208#0 | Of what? |
| [redacted] | This |
| garis208#0 | But why are you scared? |
| [redacted] | I fear judgement |
| [redacted] | And Iâ€™ve like never done this before |
| garis208#0 | What am I gonna judge? Lol |
| garis208#0 | I'm gonna love your pussy and want cum inside more than ever <:Fufu:428463284790755339> |
| [redacted] | No matter what |
| [redacted] | ? |
| garis208#0 | Of course |
| [redacted] | Like are you sure though |
| garis208#0 | I am sure |
| [redacted] | Okay fine |
| garis208#0 | I want nothing more right now |
| garis208#0 | Than to see it |
| [redacted] | Nothing? |
| garis208#0 | Nothing, I want to see your cute pussy i been craving since we met |
| [redacted] | Really |
| [redacted] | Wow |
| garis208#0 | Ya, if you don't want to, you don't have too. But I really do what see it |
| [redacted] | Hmm |
| [redacted] | I might have to go shave first ðŸ’€ |
| garis208#0 | Nah it's fine, I like both hairy or bare |
| [redacted] | Impossible |
| garis208#0 | Let me see your hairy pussy |
| [redacted] | No |
| garis208#0 | Why not? |
| [redacted] | Because I canâ€™t |
| [redacted] | No way you like hairy |
| garis208#0 | I do, why wouldn't I? Lol |
| garis208#0 | Do you not like my hairy cock? <:Fufu:428463284790755339> |

| | |
|---|---|
| [redacted] | I like it |
| [redacted] | I just thought itâ€™s different for girls |
| garis208#0 | Nah, I don't mind hairy pussy, legs, armpits, etc. I just care facial hair is shave |
| garis208#0 | That's it lol |
| [redacted] | Not even armpits?? |
| [redacted] | Thatâ€™s wild |
| garis208#0 | <a:shrug_girl:720628790325280871> lol |
| [redacted] | Hmmm |
| garis208#0 | Hmmm |
| [redacted] | Hmmmmmmm |
| garis208#0 | Hmmmmmmmm |
| [redacted] | What should I do |
| garis208#0 | Up to you, I rather see your hairy pussy |
| [redacted] | Iâ€™d rather shave |
| garis208#0 | Then you can do that if you want princess |
| [redacted] | Okâ€¦ |
| [redacted] | Ahhh Iâ€™m scared |
| garis208#0 | It's okay, master is here for you <a:pat_love:720628748247892050> |
| [redacted] | Iâ€™m breathing so heavy right now |
| [redacted] | But thank you |
| garis208#0 | Ofc princess |
| garis208#0 | Would getting your reward now help out? |
| [redacted] | No I want to wait |
| [redacted] | Itâ€™ll be more satisfying |
| garis208#0 | Okay. How often do you shave your pussy? |
| [redacted] | Honestly not much because thereâ€™s no reason for me to |
| garis208#0 | So it's really hairy or you don't grow much? |
| [redacted] | No comment |
| garis208#0 | Honestly if your pussy was hairy, that kinda turns me on lmao |
| [redacted] | Why |
| garis208#0 | Hmmm idk, maybe cause it's more intimate? Since they are usually shaved or at least trimmed |
| [redacted] | Oh |
| [redacted] | I already started shaving though |
| garis208#0 | Take a video shaving? Lmaoooo |
| [redacted] | noooooooooooo |
| [redacted] | Definitely not |
| garis208#0 | Figured, just wanted to tease |
| [redacted] | Rightâ€¦ rightâ€¦ |
| garis208#0 | I mean if you took the video, I would have liked it |
| garis208#0 | Not denying being a pervert lol |
| [redacted] | ðŸ˜ |

| | |
|---|---|
| s[redacted] | Yeah thatâ€™s so pervy |
| garis208#0 | But you like that your master is so perverted, don't you? |
| s[redacted] | Yeah itâ€™s a good thing |
| s[redacted] | In this case |
| garis208#0 | Why's that? |
| s[redacted] | I mean I donâ€™t know how to explain it |
| garis208#0 | You just like the idea that no matter what you say or do, master craves you? |
| s[redacted] | Yes |
| s[redacted] | That |
| garis208#0 | What a naughty girl |
| s[redacted] | Okay but you like that I crave you, right? |
| garis208#0 | Of course |
| s[redacted] | Okay well itâ€™s the same |
| s[redacted] | This is taking forever |
| garis208#0 | That hairy? <:Fufu:428463284790755339> |
| s[redacted] | Noo |
| s[redacted] | Itâ€™s just like hard to do |
| s[redacted] | Itâ€™s like an inconvenient location |
| garis208#0 | Ya, makes sense |
| s[redacted] | Soo Iâ€™m scared |
| s[redacted] | I got the picture but I donâ€™t think itâ€™s very good |
| s[redacted] | And I left a bit of hair because itâ€™s literally impossible to get it all |
| garis208#0 | that's okay, it's fine I'm sure |
| s[redacted] | Ahahshfufhdhdahahagaggghhhhhhh |
| s[redacted] | Iâ€™m losing my mind |
| garis208#0 | take your time princess <a:pat_love:720628748247892050> |
| s[redacted] | AHH |
| s[redacted] | AHH |
| s[redacted]0 | AHHXJFU |
| s[redacted]0 | KAKSKCKFKF |
| s[redacted] | IM LOSING IT |
| s[redacted] | LIKE I CANT DO THIS |
| s[redacted] | IM GOING CRAZY |
| | DFIJNFVEIJEFNVIJEFNVIJEFNVJIEVFNIUVNEIRUVNEIRUVNEURIV |
| | NUIERVHIEURVHUIERHVIUERHVUIERVHIUERHVIUERHVUIERHVI |
| | UERHVUIEFVHIERUBHUEIRBHEIURHBEROJNEORJVNERIUVHERIU |
| | VHERIUBHEIUNVEORIJVSODKJCOKSDJVDIFJVN7WORUJWEOICJS |
| | DOERIUGHIWURFJOWIRVJSOJFVNDIF)BB7ERHGE7RVHWOJRNVIE |
| s[redacted] | JFNVIEJFHVIEJRNVEJINRVERIJVNEIJRVNEFIJVN |
| garis208#0 | sorry in a game, you have such a nice pussy! |

This specific excerpt of text communications is noteworthy because GOMORA is specifically requesting an image/video of MV1's vagina. The times and date for this communication over Discord closely track the time and date captured in the metadata for the sexually explicit image file observed on MV1's iPad described previously in the affidavit.

**GOMORA discusses meeting MV1 in person and references a flight and a hotel**

June 2, 2025

| | |
|---|---|
| garis208#0 | are you free on wednessday july 9th? what's your schedule? |
| garis208#0 | also what's your june schedule for the 15th and later, looking at flights some more |
| s[redacted] | Iâ€™m free on June 16 1-3, 17th after 2:30, 19th 1-3, 20th-22nd all day, 23rd 1-3 |
| s[redacted] | I should be free all day on July 9th |
| s[redacted] | Unless my coach scheduled a match for that day |
| garis208#0 | hmm okay, cause I kinda wanna take my vacation in 2 or 3 weeks, 5-6 weeks is too long lmao |
| garis208#0 | on the 1-3 is that when you are fre, or when you are busy? lol |
| s[redacted] | So I donâ€™t think Iâ€™m free at all on those days because apparently I have individual therapy at 3 |
| s[redacted] | Monday isnâ€™t a good day |
| garis208#0 | ahh okay |
| garis208#0 | do you know if there are places up late at night, like midnight? cause one flight arrives miami to cin at around 11:30 pm on thursday and it's really cheap direct, was maybe thinking miami first, then cin, still looking tho |
| garis208#0 | would be the weekend of 20,21 fyi |
| s[redacted] | Oh okay |

June 4, 2025

| | |
|---|---|
| garis208#0 | Still deciding cause your mom's birthday. If I went firday-sunday. Can you hang out sunday? |
| s[redacted] | Probably |
| s[redacted] | Or I could do Friday |
| garis208#0 | well ya, i mean friday and sunday lol |
| s[redacted] | Oh yeah |

| | |
|---|---|
| garis208#0 | so the 20th and 22th you free all day, correct? |
| s[redacted] | I should be |
| garis208#0 | so just be ready for master to pound you real good |
| garis208#0 | also i submited my vacation time.if it get approved my tickets i am planning to get are friday 12 pm arrival, leaving monday 6am |
| garis208#0 | 20-23 |
| s[redacted] | Oooh |
| s[redacted] | Yay |
| s[redacted] | Iâ€™m excited!! |
| garis208#0 | Same <a:sip:741701569871085579> |
| s[redacted] | Where is it |
| garis208#0 | wdym |
| s[redacted] | Like where is your air bnb |
| garis208#0 | oh so the cheap ones where north of the B&B but there were shared homes, so iwas thinking of just getting a hotel for more privacy |
| garis208#0 | there's some hotels near the B and B |
| s[redacted] | Oh ok |
| garis208#0 | was thinking maybe 5944 West Chester Rd, West Chester Township, OH 45069 |

<u>June 9, 2025</u>

| | |
|---|---|
| s[redacted] | Because my parents will be less suspicious if I go to the library |
| s[redacted] | Because then Iâ€™ll actually get a book |
| garis208#0 | I seee |
| s[redacted] | Iâ€™m afraid my parents wonâ€™t let me drive there |
| s[redacted] | They might drive me there |
| s[redacted] | But I guess we could walk to the hotel because itâ€™s not far |
| garis208#0 | Ya that works |
| garis208#0 | How often do they not let you drive it tho? |
| s[redacted] | Well recently itâ€™s been a lot |
| s[redacted]0 | They donâ€™t want me to drive off a bridge or something |
| s[redacted] | I have a feeling they will let me go to the library though |
| garis208#0 | Ohh I see |
| s[redacted] | Since they let me drive to school |

| | |
|---|---|
| [redacted] | And itâ€™s directly across the street |
| garis208#0 | Nice nice |
| [redacted] | The library is only half a mile away |

17. Discord provided images and videos that were exchanged between the users. I did not observe any files depicting child pornography; however, I did observe multiple images depicting MV1 with her breasts exposed and one photo of apparent child pornography located on MV1's devices, specifically depicting a post-pubescent minor female matching the likeness of MVI sitting down with her legs spread exposing her vagina. The file date of the child pornography file closely tracks and falls within the timeline of the communication between GOMORA and MV1. I believe the explicit images and videos that were sent by MV1 at the request of GOMORA were deleted on Discord. There are multiple examples within the communication between GOMORA and MV1 in which they reference deleting the files after being sent. Based on my training and experience, I believe that GOMORA saved these files onto his electronic device (ie. cell phone).

18. Your affiant obtained a federal search warrant (1:25-mj-709) on September 2, 2025, signed by the Honorable Karen L. Litkovitz, United States Magistrate Judge for the Southern District of Ohio authorizing the search of Google account: RGOMORA@GMAIL.COM.

19. Your affiant reviewed the content provided by Google, LLC as a result of the issued search warrant for the account RGOMORA@GMAIL.COM. Your affiant observed evidence of flight email confirmations. The confirmations revealed a flight itinerary for GOMORA detailing a flight from Miami to Cincinnati on June 20, 2025. Furthermore, your affiant observed multiple receipt confirmations from Uber showing travel for GOMORA in Cincinnati from the dates June 20, 2025 through June 23, 2025 including one receipt detailing travel from 11645 Chesterdale

Road, Cincinnati, OH 45246 (Welcome Suite Springdale Hotel) to [redacted], West Chester, OH 45069 ([redacted] Library West Chester). These locations and timeframe line up with MV1's statements and the investigation conducted by West Chester Police Department.

20. On August 22, 2025, FBI Cincinnati issued an administrative subpoena to T-Mobile USA, Inc requesting subscriber information and toll records associated with cell phone number 305-776-0638 (**Target Cell Phone**). FBI Cincinnati identified the **Target Cell Phone** number in the subscriber information provided by Discord for user garis208#0000 referenced previously. T-Mobile provided that the subscriber for the **Target Cell Phone** is L[redacted] G[redacted], [redacted], Homestead, FL 33035. Based on law enforcement database inquires, L[redacted] G[redacted] appears to be first degree family member of GOMORA. Toll records revealed that the **Target Cell Phone** was active as of August 22, 2025.

21. On November 7, 2025, FBI Cincinnati obtained a federal search warrant (1:25-MJ-00881) in the Southern District of Ohio, signed by the Honorable Magistrate Judge Stephanie K. Bowman authorizing the search of historical location information, prospective ping and cellular location, and prospective pen register/trap and trace information associated with the **Target Cell Phone**. In the months of November 2025 and early December 2025, the **Target Cell Phone** has had consistent ping location in the vicinity of 630 South Kenmore Avenue, Apt. 104, Los Angeles, CA 90005, which law enforcement believes to be GOMORA's residence based on, among other things, a recent lease agreement in GOMORA's name that was obtained in the review of his Google account: RGOMORA@GMAIL.COM.

22. Based on the facts set forth in this affidavit, there is probable cause to believe that GOMORA uses the **Target Cell Phone**. In my training and experience, information about the **Target Cell Phone's** location would also provide evidence relevant to these offenses under

investigation. For example, I believe that the information sought by this warrant will, among other things, help the investigative team monitor to continue its efforts in monitoring the location of the **Target Cell Phone** and determine the location of GOMORA.

23. Based on my training and experience, I know that cell phones contain vast amounts of personal data; therefore, people usually carry their cell phones with them on their person or store them nearby. I also know from my training and experience that in today's age it is typical for individuals engaged in criminal activity to possess multiple active cellular phones at one time. For example, many criminals have one phone that they use for personal communications (e.g., with family members) and another phone that they use to communicate with criminal associates. For this reason, I believe that by monitoring the location of the **Target Cell Phone**—and thus "GOMORA"—agents and officers will be able to locate GOMORA.

24. I believe that the historical information sought by this warrant will further my investigation by revealing, among other things, frequented locations of GOMORA. Learning where GOMORA traveled may also help investigators locate GOMORA.

25. Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information

can be used to identify the **Target Cell Phone's** user or users and may assist in the identification of co-conspirators and/or victims.

26. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records**.** E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

27. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the **Target Cell Phone**, including by initiating a signal to determine the location of the **Target Cell Phone** on T-Mobile's network or with such other reference points as may be reasonably available.

28. Based on my training and experience, I know that T-Mobile can collect historical and prospective cell-site data about the **Target Cell Phone**. Based on my training and experience,

I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

29. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **Target Cell Phone's** user or users, to assist law enforcement in surveilling the **Target Cell Phone's** user during the commission of violations of the subject offenses, to show where the **Target Cell Phone's** user was at certain times relevant to the investigation, and to provide evidence of locations used by the suspect (such as residences and storage locations for CSAM).

**<u>AUTHORIZATION REQUEST</u>**

30. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

31. I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

32. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Cell Phone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

33. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the **Target Cell Phone** on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

34. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

35. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Brandon Capps
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
via FaceTime on December 5, 2025

Karen L. Litkovitz
United States Magistrate Judge

# ATTACHMENT A

## Property to Be Searched

1. The cellular telephone assigned call number **305-776-0638** (the "**Target Cell Phone**"), whose service provider is T-Mobile USA, Inc ("T-Mobile"), a wireless telephone service provider headquartered in Parsippany, New Jersey.

2. Records and information associated with the **Target Cell Phone**, including location information, that is within the possession, custody, or control of T-Mobile**,** including information about the location of the cellular telephone if it is subsequently assigned a different call number.

**ATTACHMENT B**

**Particular Things to be Seized**

## I. Information to be Disclosed by the Provider

1. *Historical and Subscriber Information*. To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **November 8, 2025 to present**:

   a. The following information about the customers or subscribers of the Account:

      i. Names (including subscriber names, user names, and screen names);
      ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
      iii. Local and long distance telephone connection records;
      iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
      v. Length of service (including start date) and types of service utilized;
      vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
      vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and
      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

   b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication – i.e., call detail records - and records of data events across all networks (3G, 4G, 5G)
      ii. All historical location information, including data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the Target Cell Phone for the time period November 8, 2025, to present. Included is any specialized location data commonly referred to as Network Element Location Service

(NELOS), AriesoGeo, Per Call Measurement Data (PCMD), Real Time Tool (RTT), and/or Timing Advance/TruCall.

2. *Prospective Location Information*. The Provider shall provide all prospective location information about the location of the Target Cell Phone described in Attachment A for a period of **thirty days**, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A. To the extent that the location information is within the possession, custody, or control of Provider, Provider is required to disclose the Location Information to the government. This includes all call detail records required to produce the requested location information. Note that this does not include the content to communications. In addition, Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

3. *Prospective Pen-Trap Information*. Pursuant to 18 U.S.C. § 3123, the FBI may install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the cell phone identified in Attachment A, including the date, time, and duration of the communication, and the following, without geographic limit:

- IP addresses associated with the cell phone device or devices used to send or receive electronic communications
- Identity of accounts that are linked by creation IP address, recovery email, telephone number, or other identifiers
- Identity of all accounts that are linked to the account by cookies
- Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone identified in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN
- IP addresses of any websites or other servers to which the cell phone device or devices connected
- Source and destination telephone numbers and email addresses
- "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c)
- Source and destination telephone numbers
- Date, time, and duration of communication
- All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication. Included is any specialized location data commonly referred to as Network Element Location

Service (NELOS), AriesoGeo, Per Call Measurement Data (PCMD), Real Time Tool (RTT), and/or Timing Advance/TruCall.

Pursuant to 18 U.S.C. § 3123(c)(1), the use and installation of the foregoing is authorized for **thirty days** from the date of this Order. Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

## II. Information to be Seized by the Government

1. All information described above in Section I that constitutes evidence of 18 U.S.C. § 2422(b) – Coercion and enticement, 18 U.S.C. § 2252A(a)(2) - distribution or receipt of child pornography, and 18 U.S.C. § 2252A(a)(5)(B) - possession of child pornography, the "subject offenses".

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

Pursuant to 2703(g), the presence of an agent is not required for service or execution of this warrant.

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means ❒ Original ❒ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER 305-776-0638 (T-MOBILE USA, INC.)

Case No. **1:25-mj-00962**

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ______ District of New Jersey *(identify the person or describe the property to be searched and give its location)*:

See Attachment A. This court has authority to issue the warrant under 18 U.S.C. Sections 2703(c)(1)A), and 2711(3)(A). Because the government has satisfied the requirements of 18 U.S.C. Section 3122, this warrant also constitutes an order under 18 U.S.C. Section 3123.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before 12/19/2025 *(not to exceed 14 days)*

❒ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Honorable Karen L. Litkovitz.
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☑ for 30 days *(not to exceed 30)* ❒ until, the facts justifying, the later specific date of ______.

Date and time issued: **10:54 AM, Dec 5, 2025**

Karen L. Litkovitz
United States Magistrate Judge

City and state: Cincinnati, Ohio

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| --- | --- | --- |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ____________________

____________________
*Executing officer's signature*

____________________
*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

1. The cellular telephone assigned call number **305-776-0638** (the "**Target Cell Phone**"), whose service provider is T-Mobile USA, Inc ("T-Mobile"), a wireless telephone service provider headquartered in Parsippany, New Jersey.

2. Records and information associated with the **Target Cell Phone**, including location information, that is within the possession, custody, or control of T-Mobile**,** including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

### I. Information to be Disclosed by the Provider

1. *Historical and Subscriber Information*. To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **November 8, 2025 to present**:

   a. The following information about the customers or subscribers of the Account:

      i. Names (including subscriber names, user names, and screen names);
      ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
      iii. Local and long distance telephone connection records;
      iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
      v. Length of service (including start date) and types of service utilized;
      vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
      vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and
      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

   b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. the date and time of the communication, the method of the communication, and the source and destination of the communication – i.e., call detail records - and records of data events across all networks (3G, 4G, 5G)
      ii. All historical location information, including data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the Target Cell Phone for the time period November 8, 2025, to present. Included is any specialized location data commonly referred to as Network Element Location Service

(NELOS), AriesoGeo, Per Call Measurement Data (PCMD), Real Time Tool (RTT), and/or Timing Advance/TruCall.

2. *Prospective Location Information*. The Provider shall provide all prospective location information about the location of the Target Cell Phone described in Attachment A for a period of **thirty days**, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A. To the extent that the location information is within the possession, custody, or control of Provider, Provider is required to disclose the Location Information to the government. This includes all call detail records required to produce the requested location information. Note that this does not include the content to communications. In addition, Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

3. *Prospective Pen-Trap Information*. Pursuant to 18 U.S.C. § 3123, the FBI may install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the cell phone identified in Attachment A, including the date, time, and duration of the communication, and the following, without geographic limit:

- IP addresses associated with the cell phone device or devices used to send or receive electronic communications
- Identity of accounts that are linked by creation IP address, recovery email, telephone number, or other identifiers
- Identity of all accounts that are linked to the account by cookies
- Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone identified in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN
- IP addresses of any websites or other servers to which the cell phone device or devices connected
- Source and destination telephone numbers and email addresses
- "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c)
- Source and destination telephone numbers
- Date, time, and duration of communication
- All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication. Included is any specialized location data commonly referred to as Network Element Location

Service (NELOS), AriesoGeo, Per Call Measurement Data (PCMD), Real Time Tool (RTT), and/or Timing Advance/TruCall.

Pursuant to 18 U.S.C. § 3123(c)(1), the use and installation of the foregoing is authorized for **thirty days** from the date of this Order. Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

## II. Information to be Seized by the Government

1. All information described above in Section I that constitutes evidence of 18 U.S.C. § 2422(b) – Coercion and enticement, 18 U.S.C. § 2252A(a)(2) - distribution or receipt of child pornography, and 18 U.S.C. § 2252A(a)(5)(B) - possession of child pornography, the "subject offenses".

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

Pursuant to 2703(g), the presence of an agent is not required for service or execution of this warrant.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.